## Union Mutual Building and Loan Association v. Aichele et al.

[No. 3,764.  Filed June 25, 1901.  Rehearing denied October 1, 1901.  Transfer denied December 10, 1901.]

Building and Loan Associations.—*Maturity of Stock.—Stock Certificate.—Guaranty.*—A provision in a stock certificate of a building and loan association that the association would pay the holder $100 for each share as soon as the accumulation in the loan fund should equal $100 per share, but in no case should the shareholder be required to make more than seventy monthly payments, is not a guaranty that the stock will mature upon such number of payments, but is a limitation of the liability of the shareholder to make more than seventy monthly payments.

From Vanderburgh Superior Court; *J. H. Foster*, Judge.

Suit by the Union Mutual Building and Loan Association against Christina Aichele and others to foreclose a mortgage. From a judgment for plaintiff for part of demand, it appeals. *Reversed.*

*Louis O. Rasch, R. W. McBride, C. S. Denny* and *J. E. Franklin*, for appellant.

*Peter Maier* and *T. J. Moll*, for appellees.

COMSTOCK, J.—Appellant, an incorporated building and loan association, sued appellee upon a promissory note and to foreclose a mortgage on real estate given to secure the payment of the same. Judgment was rendered in favor of appellant for $60.50, and for the foreclosure of said mortgage and the sale of the real estate. The note bears date Jan. 1, 1892. On the ——— day of November, 1891, appellant issued to appellee, Christina Aichele, its certificate for six shares of stock. This stock was pledged as collateral security for the payment of said note.

The question presented by this appeal is what construction must be given to this stock certificate. The following is a copy of the note: "First mortgage note. $600. Indianapolis, Ind., January 1, 1892. Sixty-seven months after date, for value received, I promise to pay to the Union Mutual Building and Loan Association, a corporation duly organized under the laws of the State of Indiana, the sum of $600, with six per cent. interest per annum, and five per cent. premium thereon from date until paid, payable monthly on or before the last Saturday of each month. Principal, interest, and premium payable at the office of said association, at Indianapolis, Indiana, with reasonable attorney's fees, all without any relief from valuation or appraisement laws. Any failure to pay interest or premium when due shall make principal, interest, and premium at once due, and any waiver of such right shall not prevent the payee from enforcing the right upon any recurrence of the

default. The shares of stock in the Union Mutual Building and Loan Association held by the undersigned, as shown by certificate of stock No. 1,323, are hereby transferred and pledged to said association as collateral security for the performance of the conditions of this obligation and of the mortgage securing the same. Christina Aichele, Frederick Aichele." The stock certificate which was introduced in evidence is as follows: "Union Mutual Building and Loan Association, Indianapolis, Ind. Certificate No. 1,323. No. of shares 6. Amount, $600. This certifies that Christina F. Aichele, of Evansville, county of Vanderburgh, State of Indiana, is a member of the Union Mutual Building and Loan Association of Indianapolis, Indiana, and has subscribed for six shares of stock therein. In consideration of the monthly payment of ninety cents on each and every share named in this certificate, together with a full compliance with the rules and regulations set forth in the by-laws of the association, a copy of which by-laws is furnished herewith, the receipt of which is acknowledged by the acceptance of this certificate, the Union Mutual Building and Loan Association agrees to pay to the above named shareholder, her heirs, executors, administrators or assigns the sum of $100 for each of said shares, as soon as the accumulations in the loan fund shall equal $100 per share, but in no case shall the shareholder be required to make more than seventy monthly payments on said shares. Said payments to be made at the home office in the city of Indianapolis, Indiana, within ninety days after the maturity of this certificate. In no event is this certificate to be considered as having matured, until one month after the date of the last monthly payment. The regular annual meeting of this association will be held at the home office, in the city of Indianapolis, Indiana, on the first Monday in October in each year, at 2 o'clock p. m. Given under the seal of the Union Mutual Building and Loan Association, at Indianapolis, Indiana, this 1st day of October, 1891. Jno. C. Shoemaker, President, James E. Franklin, Secretary."

Appellant claims that the language of the certificate is a limitation of the liability of the shareholder to make monthly payments of dues; that it is not a guaranty of maturity. The position of appellees is that it was a guaranty that the shares would mature and be of the value of $100 when seventy monthly payments had been made, and that the trial court in effect so decided.

The following language of the certificate: "The Union Mutual Building and Loan Association agrees to pay to the above named shareholder, her heirs, executors, administrators or assigns, the sum of $100 for each of said shares as soon as the accumulations in the loan fund shall equal $100 per share, but in no case shall the shareholder be required to make more than seventy monthly payments on said shares" fixes the time of the maturity of the stock, as soon as the loan fund shall equal $100 per share. If when seventy monthly payments have been made the stock is not of the value of $100 a share, no further monthly payments can be required; but the stock is not matured until the added earnings of the association make them of par value. This construction is required by the language of the certificate, which expressly fixes the time when the association will pay the shareholder $100 for each share. That the limitation in the number of payments is not a guaranty that the stock will mature upon such number of payments, but that its only effect is to relieve the shareholder from the duty of making any more than seventy monthly payments is not only required by the language itself, but is a just and reasonable construction.

Beach on Contracts, §708, says: "A reasonable construction should be given every contract for it should not be presumed that the parties intended anything either senseless or absurd. A rigid adherence to the letter often leads to results and misinterprets the meaning of the parties. Inconsistent clauses must be construed according to the subject-matter and the motive and the intention of the

parties as gathered from the whole instrument must prevail over the strictness of the letter. The fact that the construction contended for would make the contract inequitable and place one of the parties at the mercy of the other may be taken into consideration."

Endlich on Building Associations, §517, describes incorporated building associations as incorporated partnerships.

In *Towle* v. *American, etc., Soc.*, 61 Fed. 446, it is said: "These associations are essentially corporate copartnerships. They have no function except to gather together, from small, stated contributions, sums large enough to justify loans. Their officers are the agents of every stockholder. They have no debtors, or creditors except the stockholders, and whether a stockholder is creditor or debtor depends on whether he has exercised his privilege of borrowing money from the common fund."

In *Security, etc., Assn.* v. *Elbert*, 153 Ind. 198, our Supreme Court adopted the foregoing view that the relation existing between the members of a building association is that of a *quasi* partnership. The members share in profits and losses. The shares are matured by the payment of dues and the accumulation of property. They can only reach their par value when the payment of dues and accumulation of profits have reached an actual value of $100 per share. If a shareholder is allowed to withdraw $100 per share when he has paid in seventy instalments of ninety cents each, or $63, whether the association has made or lost money, the element of mutuality would be destroyed and inequality result to other members of the association. Such construction would be unreasonable. Reference is made to *Bertche* v. *Equitable, etc., Assn.*, 147 Mo. 343, 48 S. W. 954; *Daley* v. *People's, etc., Assn.*, 178 Mass. 13, 52 N. E. 1090; Thompson on Building & Loan Assns. (2nd ed.), §§175, 314; *King* v. *International, etc., Union*, 170 Ill. 135, 48 N. E. 677; Note to *Robertson* v. *American, etc.*,

*Assn.*, 69 Am. Dec. 160; Endlich on Building & Loan Assns., §480.

The question of fraudulent representation of the agent or agents of the association as to the date of the maturity of the stock is not presented. The conclusion reached renders it unnecessary to consider the proposition for which counsel for appellant contend that it is not within the power of a building association to guarantee a fixed period for the maturity of its stock.

The decision in *Lime City, etc., Assn.* v. *Wagner*, 122 Ind. 78, 17 Am. St. 342, cited by counsel for appellee, turned upon the construction to be given a certain section of the by-laws of the association. Such section provided, that "All loans shall become due in six years from the date of this corporation, or on the stock of the association becoming of par value, in either of which cases the note given by the borrower, and the stock upon which the loan was made, shall be set off against each other." The case is not in point.

The judgment is reversed, with instruction to sustain appellant's motion for a new trial and for further proceedings not inconsistent with this opinion.