## HARTMAN ET AL. *v*. INTERNATIONAL BUILDING AND LOAN ASSOCIATION.

[No. 4,046.    Filed December 10, 1901.]

BUILDING AND LOAN ASSOCIATIONS.—*Foreclosure of Mortgage.—False Representations.—Fraud.*—An answer alleging that the officers and agents of plaintiff building and loan association falsely represented to defendant that if he would become a member of the association, contract the loan, and pay the dues, interest and premiums, the bond and mortgage would be paid and canceled by a specified number of payments, constitutes a good defense to an action to foreclose such mortgage, after the member had made the specified number of payments, where the bond is susceptible of the construction given it in the representations made by plaintiff.

From Delaware Circuit Court; *Joseph G. Leffler*, Judge.

Suit by the International Building and Loan Association against Preston S. Hartman and others to foreclose a mortgage. From a judgment for plaintiff, defendants appeal. *Reversed.*

*Theodore Shockney, C. H. Shockney* and *J. Shockney*, for appellants.

*O. H. Adair* and *J. F. LaFollette*, for appellee.

ROBINSON, J.—The question presented by this appeal is the sufficiency of an answer to a complaint by appellee asking judgment on a bond for $800 and the foreclosure of a mortgage. This answer alleges substantially that appellant is a member of appellee association, and that for the purpose of inducing him to become such member, and to execute the bond and mortgage sued on, appellee, its officers, servants and agents falsely and fraudulently represented to him that if he would become a member and shareholder and subscribe for eight shares of stock of the face value of $100 each, and pay appellee seventy-five cents per share monthly in advance for seventy-two months, at the end of that time it would pay him $800; that believing such representations to be true, and hav-

ing no other means of information, and wholly relying upon such representations, he 'became a member, and prior to the bringing of· this action he had made the seventy-two payments.  It is further alleged that to induce him to execute the bond and mortgage, appellee fraudulently represented that if he would surrender his stock and would pay, monthly, seventy-two months, seventy-five cents per share, and five per cent. interest and five per cent. premium, that the debt would be thereby fully paid and the bond and mortgage would be canceled, and that he would be relieved from any further liability thereon; that appellee's agents exhibited to him printed leaflets and circulars issued by appellee explaining the language and meaning of the bond and mortgage to be that such payments for such period would discharge, pay, and satisfy the bond and mortgage, and discharge him from liability thereon; that believing such representations and such explanations so made to be true and wholly relying on them, and having no other means of knowing their truth or falsity he executed the bond and mortgage; that before the bringing of this action he had made the payments for the seventy-two months as above stipulated, and had paid appellee thereon $1,090; that if he had not believed the false and fraudulent representations so made, and the explanations in such leaflets and circulars, he would not have become a member and would not have executed the bond and mortgage; that all of such representations so made by appellee and its agents were false and fraudulent as they at the time well knew.  It is further averred that at the end of the seventy-two months, and prior to the bringing of this action, appellant had fully paid and satisfied the debt sued on, and demanded a release and cancelation of the bond and mortgage, and then first learned that such representations so made to him were false and fraudulent.

A false representation by one of the parties to a contract does not necessarily put the other on inquiry as to its truth.

If a party makes a statement of a material fact, which he knows to be untrue, for the purpose of inducing the other party to act and the one to whom it is made believes it to be true and relies and acts upon it, the party making the statement is guilty of actual fraud. *Frenzel* v. *Miller*, 37 Ind. 1, 10 Am. Rep. 62; 2 Pomeroy's Eq. (2nd ed.), §876. And as a general rule such misrepresentation must relate to some existing fact. *Bennett* v. *McIntire*, 121 Ind. 231, 6 L. R. A. 736. A statement of intention merely, or simply the expression of an opinion held by the party making it, can not be a misrepresentation amounting to fraud. A party to whom an opinion is expressed is presumed to be equally able to form his own opinion, and the expression of an intention is no more in effect than a statement that a present opinion exists. In neither case is there any affirmation of any external fact. But, as is said in 2 Pomeroy's Eq. (2nd. ed.) §877, "That the *fact,* however, concerning which the statement is made is future does not of itself prevent the misrepresentation from being fraudulent. The statement of matter in the future, if affirmed *as a fact,* may amount to a fraudulent misrepresentation, as well as a statement of a fact as existing at present." See, also, 2 Pomeroy's Eq. (2nd. ed.) §878 *et seq.*

In the case at bar it is alleged that appellee falsely represented to appellant that if he would become a member of the association and contract the loan and pay the dues, interest, and premiums, the bond and mortgage would be paid and canceled by a specified number of payments. The statements made to appellant were not merely statements of what appellee had an intention of doing, nor were they simply the expression of an opinion that a certain specified number of monthly payments would satisfy the bond and mortgage, but the representation made was that of a fact, and, although it was of a matter in the future, having proved to be false, the rights of the injured party relying upon it are not different from those growing out of the misrepresentation of a present fact.

It can not be said that appellant had no right to rely upon such statements after he had signed the bond and mortgage. The condition in the bond is that if appellant should pay the appellee the "sum of a loan of $800 this day to him made, on or before the maturity of the shares herein pledged as collateral security," and five per cent. per annum interest and five per cent. per annum premium, payable monthly, and seventy-five cents per share monthly, as dues, and perform the covenants of the mortgage given to secure the bond, then the bond to be void. There are no additional conditions in the mortgage as to the payments to be made or the maturity of the stock.

The fraud consisted of the false representations respecting the cost of the loan, rather than misrepresentations as to the contents of the bond and mortgage. The bond could have been expressed by appellant in language plain enough that a person signing it must have known exactly what it meant. The representations charged to have been made were not inconsistent with a reasonable construction of the condition named in the bond, but the bond is susceptible of the construction given it in the representations made by appellee. No by-law is set out in the pleadings to aid in its construction, and no reference is made to any by-law in either the bond or mortgage. Appellant was told that if he would take the stock, and make the specified payments, appellee would pay him $800, and that if he would execute the bond, and make the specified payments, the debt would be thereby paid. The bond simply told him that he was to pay $800 on or before the maturity of the stock by monthly payments. The bond and mortgage do not in and of themselves necessarily charge him with the information that the mortgage was given to secure a bond for the payment of a certain specified sum for an indefinite period of time. So far as disclosed by the pleadings he was not informed by any article of the constitution or by-laws of the association as to the maturity of stock or the cancelation of loans, as

was the case in *Hammerslough* v. *Kansas City, etc., Assn.*, 79 Mo. 80; *Quincy, etc., Assn.*, v. *Winget*, 29 Ill. App. 174; *Winget* v. *Quincy, etc., Assn.*, 128 Ill. 67, 21 N. E. 12; and *Lake* v. *Security Loan Assn.*, 72 Ala. 207.  The bond and mortgage in the case at bar, so far as disclosed by the pleadings, stand alone and their interpretation and meaning are not affected by any by-law, of the provisions of which a member must take notice.

The answer shows that appellant contracted the loan in good faith relying upon the representations made by appellee and believing that his liability upon the bond would cease as appellee represented; that the representations were untrue, and known by appellee to be untrue when made, and were made to induce him to incur the obligation.  By these misrepresentations appellant was misled to his injury. The reasons underlying the opinions in *Union Central, etc., Ins. Co.* v. *Huyck*, 5 Ind. App. 474, and *Elsass* v. *Moores Hill, etc., Inst.*, 77 Ind. 72, are applicable in the case at bar. To the complaint filed the answer was sufficient, and the demurrer should have been overruled.  See, *Sawyer* v. *Menominee, etc., Assn.*, 103 Mich. 228, 61 N. W. 521.

Judgment reversed.